```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Richard Dean Kinser,             :

        Plaintiff,               :

    v.                           :   Case No. 2:13-cv-0081

                                 :   JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,     Magistrate Judge Kemp

        Defendant.               :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Richard Dean Kinser, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for supplemental security income. That application was filed on January 22, 2009, and alleged that plaintiff became disabled on January 2, 2009.

After initial administrative denials of his application, Plaintiff was given a video hearing before an Administrative Law Judge on July 20, 2011. In a decision dated September 8, 2011, the ALJ denied benefits. That became the Commissioner's final decision on November 28, 2012, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on April 8, 2013. Plaintiff then moved for a remand under 42 U.S.C. §405(g), sentence six. In an order filed on July 29, 2013, the Court deferred a ruling on that motion pending the submission of, and briefing on, Plaintiff's statement of errors. Plaintiff filed his statement of specific errors on August 27, 2013. The Commissioner filed a response on September 30, 2013. Plaintiff filed a reply brief on October 14, 2013, and the case is now ready to decide.

    II.   <u>Plaintiff's Testimony at the Administrative Hearing</u>

    Plaintiff, who was 51 years old at the time of the administrative hearing and who has a tenth grade education, testified as follows. His testimony appears at pages 36-61 of the administrative record.

    Plaintiff testified that he quit school at age 17. He was not quite eligible for special education classes but he flunked all his grades. He served three years in the military and then began working in the masonry business. He learned the trade from his father, and that is the only type of work he has ever done. Many times he worked for cash and those earnings would not be reflected on his earnings statement.

    In 1997, Plaintiff injured his lower back. He had two surgeries in either 1997 or 1998, followed by rehabilitation. He was off work for nine years and went back to work in 2006. In 2009, after his alleged disability onset date, he worked for two months because of financial need. He worked on an off in 2010 as well. He could not have worked continually during that year due to his back problems. Other problems preventing him from working included leg pain and COPD.

    As of the date of the hearing, Plaintiff was experiencing pain in his groin and thigh, which had persisted since his second surgery. He continued to have low back pain. Breathing was difficult in bad weather, and also when he went up or down stairs. He had trouble climbing or bending. He could walk half a mile.

    On a daily basis, Plaintiff used a nebulizer three or four times for shortness of breath. He watched very little TV and did not read. He was most comfortable sitting on the floor with his back against a couch. He could sit for fifteen or twenty minutes before needing to get up and move around. He was able to mow the lawn, do dishes, and cook. He could not stand in one position more than twenty minutes at a time. He could lift his five-year-old granddaughter. He was also able to drive for ten or fifteen

miles by himself.  He could not write a check or read the newspaper.

In response to questioning from the Administrative Law Judge, Plaintiff stated that he still had some issues with alcohol abuse and drank a twelve-pack of beer twice a week.  He could read the help wanted ads in the newspaper and took a written test for his driver's license rather than an oral test.

### III.  The Medical Records

The medical records in this case are found beginning on page 215 of the administrative record.  The Court summarizes the pertinent records as follows.  Because Plaintiff's claims of error relate to his physical impairments (and not to all of them), the Court will focus its summary on the records dealing with the physical conditions which Plaintiff has placed at issue rather than other physical or psychological conditions.

VA hospital records from February 11, 2009, show that Plaintiff was being treated for tobacco use disorder, low back pain, a rotator cuff or capsule sprain, and an umbilical hernia.  He had previously reported chest pain and underwent testing at Licking Memorial Hospital, which did not reveal any cardiac issues.  The records go back to 2007 and indicate a work-related injury that year from lifting heavy rocks at work.  (Tr. 304-28).

Dr. Weaver saw Plaintiff on May 28, 2009 for purposes of conducting a consultative physical examination.  Plaintiff reported a low back injury in 1997 and two prior surgeries including a fusion at L4-5.  He described significant limits on sitting, walking and standing due to pain.  He also told Dr. Weaver about the 2007 shoulder injury and noted that he had surgery on the shoulder, followed by physical therapy and exercises.  He reported significant issues with using his right arm for reaching, lifting and working overhead.  The only medications he took for either his back or shoulder were Flexeril

and ibuprofen.

On examination, Plaintiff walked with a slight limp and became short of breath after walking forty feet. Testing showed "ratchety giving way with pain inhibition in the right shoulder muscles." The range of motion in that shoulder was also restricted. Involuntary muscle spasm was present in the lumbar paravertebral muscles and range of motion in the low back was also restricted. Straight leg-raising tests were negative bilaterally. Based on these findings, Dr. Weaver concluded that Plaintiff could do occasional light lifting and carrying, but he would have limitations on sustained sitting, standing, walking, climbing, reaching with the right arm, and performing repetitive or moderate to heavy lifting. (Tr. 333-39).

Dr. Torello, a state agency reviewer, completed a physical residual functional capacity form on September 9, 2009. She stated that, in her opinion, Plaintiff could do a range of light work but, among other things, was "[l]imited to no overhead reaching on the right." She did not give much weight to Dr. Weaver's view that plaintiff was limited in his ability to walk and stand. (Tr. 375-82). Her assessment was subsequently confirmed by Dr. McCloud. (Tr. 422, 423).

There is a second set of VA treatment records which begin with a February 23, 2010 summary of treatment. They show that Plaintiff was still being treated for the same issues plus a closed fracture of the sternum and essential hypertension. The notes also show that Plaintiff was taking Tramadol for pain along with acetaminophen. A third set of such notes, covering treatment from January 14, 2010 through April 1, 2011, is also part of the record. Those notes show, in relevant part, that the flexion, extension and rotation of Plaintiff's shoulder were all normal (Tr. 425); that he had been hunting in the winter of 2010-11 and walking over uneven terrain was causing him increased back

pain (Tr. 431); that he was taking Vicodin for pain but was asking for something stronger; that on January 6, 2011 he said he had been "off work for the last 8 weeks" (Tr. 434); that x-rays showed mild discogenic disease between L4-5 and more advanced disease between L5 and S1 (Tr. 439); that on December 10, 2010 he reported he was "dong really well" up until about two months before when he lifted a heavy item and threw it over his head (Tr. 448); that on August 2, 2010, the VA physician, Dr. Walker, said that "for now I have no diagnosis to give medicaid as to why he cannot work' (Tr. 461); and that he did not, during that time, report any pain or problems with his right shoulder. Similarly, he did not mention any shoulder issues when he visited the Emergency Room in February, 2011, and that was not one of the diagnoses in those notes.  (Tr. 482-85).

    The final medical exhibit consists of more VA treatment notes.  They show that on March 28, 2011, Plaintiff was taken off Vicodin and put on methadone, which was making him very sick, that he had also injured his right wrist while throwing firewood, and that he was able to walk almost a quarter of a mile on a treadmill.  He could lift thirty pounds to shoulder level and from floor to waist level, as well as thirty pounds from shoulder level to overhead, and had a sitting tolerance of 35 minutes and a standing tolerance of 7 minutes.  There also appeared to be some problems with the control of Plaintiff's blood pressure and an issue with his left shoulder requiring treatment by injection. (Tr. 486-542).  These records are not on the ALJ's list of exhibits and he apparently believed, erroneously, that they were simply duplicates of other VA records.

### IV.  The Vocational Testimony

    A vocational expert, Mr. Coleman, also testified at the administrative hearing.  His testimony begins at page 61 of the record.

Mr. Coleman classified plaintiff's past work as a masonry laborer or brick layer helper as semi-skilled and heavy (per the *Dictionary of Occupational Titles*), although Mr. Coleman would classify it as very heavy work.  Plaintiff did not have any transferable job skills.

Mr. Coleman was asked questions about someone who was Plaintiff's age and had his educational background, and who could work at the light exertional level.  That person could sit for only four hours at a time, however, and stand and walk for two hours at a time and up to six hours in a workday.  The person could not climb ropes, ladders or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Finally, the person could accept only oral or hands-on instruction, had to avoid even moderate exposure to respiratory irritants and concentrated exposure to work hazards, could do only simple, routine tasks, and could not do fast-paced tasks or meet strict time-work production schedules.  Mr. Coleman responded that such a person could not do plaintiff's past work, but that such a person could perform jobs such as parking lot attendant, hand packager, and warehouse checker.  There would be slightly fewer than 1000 such jobs in the regional economy and over 150,000 in the national economy.  If the same person were limited as plaintiff testified, the medical-vocational guidelines would deem him disabled.  Also, if he could not maintain adequate attention or focus due to back pain and would be off task 20% of the time during a work day, or if he had to miss two days per month due to medical problems, he could not work.

    V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 11 through 23 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff

had not engaged in substantial gainful activity after his application date of January 22, 2009.  As far as Plaintiff's impairments are concerned, the ALJ found that Plaintiff had severe impairments including atypical chest pain, status post L4-5 fusion, right rotator cuff repair, chronic obstructive pulmonary disease, learning disability, depression and alcohol abuse.  The ALJ also found that Plaintiff's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a significant range of light work.  The limitations caused by Plaintiff's impairments were those described in the hypothetical question posed to Mr. Coleman - that is, the ability to lift, carry, push and pull twenty pounds occasionally and ten pounds frequently, to sit for four hours at a time and a total of eight hours during a work day, to walk or stand for up to two hours at a time and a total of six hours during a work day, never to climb ropes, ladders or scaffolds, and occasionally to climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  Plaintiff also needed to avoid even moderate exposure to respiratory irritants and concentrated exposure to work hazards, could do only simple, routine tasks, and could not do fast-paced tasks or meet strict time-work production schedules.  Lastly, he could accept oral instructions or hands-on instructions as needed.

The ALJ found that, with these restrictions, Plaintiff could not do his past relevant work as a bricklayer helper.  However, he could perform those jobs identified by the vocational expert such as parking lot attendant, hand packager, and warehouse checker, and that such jobs existed in significant numbers in the

national economy. Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

### VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) that the ALJ evaluated Plaintiff's potential Listing-level impairments under the wrong Listings; (2) that substantial evidence does not support the ALJ's residual functional capacity finding; and (3), in accordance with his earlier motion, that the Court should order a sentence six remand. The Court reviews the first two issues using this legal standard:

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is

supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's reply memorandum is helpful in clarifying the issues which he intended to raise by his statement of errors. The Court will analyze the issues as they are explained there.

### A. The Listings

In the responsive memorandum, the Commissioner construed Plaintiff's first statement of error to be an argument that the ALJ erred by not finding that Plaintiff's back impairment met or equaled the criteria under the pertinent section of the Listing of Impairments. However, Plaintiff explains in the reply that he did not mean to argue that the ALJ should have evaluated his back impairment under Section 1.04 of the Listing of Impairments or that he should have found that impairment to be of Listing Severity. Rather, he contends that the way the ALJ conducted this portion of the analysis, which did not include any discussion of the Listings relating to back impairments - the ALJ focused on the shoulder injury and the psychological conditions described in the record - showed that the ALJ took a "less-than-serious" approach to the entire case. Reply Memorandum, Doc. 17, at 1.

The Court does not view Plaintiff's arguments about the ALJ's step three analysis, taken as a whole, to raise any specific issue about the adequacy of that analysis. At step three, the ALJ is required to determine if a claimant's impairment "meets or equals one of our listings in appendix 1 of this subpart...." 20 C.F.R. §416.920(a)(4)(iii). The case law establishes that "a claimant has the burden of demonstrating that [his] impairment meets or equals a listed impairment." Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). "[T]here is no heightened articulation standard" for a finding that the Listings have not been met or equaled. Bledsoe v. Barnhart, 165 Fed. Appx. 408, 41 (6th Cir. Jan. 31, 2006), citing Dorton v. Heckler,

789 f.2d 363, 367 (6th cir. 1986). In order to obtain reversal on this ground, "[a] claimant must satisfy all of the criteria to meet the listing." <u>Rabbers v. Comm'r of Social Security</u>, 582 F.3d 647, 653 (6th cir. 2009). Finally, even if a claimant has presented such evidence, an ALJ's choice not to credit that evidence may not be disturbed unless that choice is not supported by substantial evidence. <u>Bledsoe, supra</u>.

Here, Plaintiff has not argued that the record contains evidence that he met or equaled any section of the Listing. He has also not argued that the ALJ's determination that he did not was not supported by substantial evidence. Consequently, there is nothing in his first statement of error, at least as he has argued it, which could support a reversal of the ALJ's step three determination.

## B. <u>The Physical RFC Determination</u>

In his second statement of error, Plaintiff seems to argue, first, that the ALJ erred by stating at one point (even though he ultimately found differently) that Plaintiff could perform a range of medium work. Again, this argument appears to be part of a larger concern that, in Plaintiff's words, the ALJ had "a less-than-completely open mind" about the overall issue of disability. <u>Statement of Errors</u>, Doc. 15, at 5. Plaintiff also criticizes the ALJ for statements about the severity of his back condition and for either misstating the evidence about the level of Plaintiff's pain or omitting any reference to positive test results for pain. In his reply, he suggests that "[d]ecisionmaking which appears to ignore aspects of the record which are not in agreement with its conclusions, and which claims the existence of evidence which is not borne out by the record, can hardly be said to meet the ... admonition that evidence, in order to be considered substantial, must take into account 'whatever evidence detracts from its weight.'" <u>Reply Memorandum</u> at 2, citing to <u>Beavers v. Secretary of Health, Education and</u>

Welfare, 577 F.2d 383 (6th Cir. 1978).

The problem with this argument, at least as it relates to Plaintiff's back condition, is that it does not point out why the ALJ's decision about the functional impact of his back condition is more severe than the ALJ found it to be.  There is no treating physician opinion in this case which the ALJ rejected, and, in fact, no such opinion at all beyond the statement from Dr. Wagner that he had no diagnosis on which to premise a statement of disability.  There is a plethora of evidence, much of it cited by the ALJ, to the effect that Plaintiff was able, at least for short periods of time, to continue to do very heavy labor even after his alleged onset date, and to perform other physical activities (such as lifting his granddaughter, cutting wood, or hunting) which are inconsistent with total disability.  The ALJ correctly pointed out that no physician had imposed limitations which are inconsistent with the conclusion that plaintiff could do a limited range of light work, and several, including Dr. Walker, Dr. Torello, and Dr. McCloud, who thought he could. Those physicians reviewed the same medical evidence that the ALJ cited, and Plaintiff does not argue that they construed it incorrectly.  Under these circumstances, the fact that the ALJ's decision may contain some misstatements or omissions does not mean that the decision he reached is not supported by substantial evidence.  See, e.g., Goble v. Comm'r of Social Security, 2012 WL 832356, *5 (N.D. Ohio March 9, 2012), holding that the "ALJ's misstatement [about the claimant's panic attacks] does not eviscerate the substantial evidence that supports the ALJ's finding", citing Brunson v. Astrue, 387 Fed. Appx. 459 (5th Cir. July 16, 2010).

Plaintiff makes a more focused argument about his right shoulder condition.  The ALJ found that Plaintiff did not have any functional limitations from that condition because, although the January, 2011 examination notes indicated only 4/5 strength

in the shoulder due to pain, "in March, 2011, the claimant was 5/5 strength in his bilateral shoulder flexion, extension abduction, adductions, and internal and external rotation (Exhibit B14F/6)" and that he had not received any significant treatment for his shoulder impairment. (Tr. 17). Plaintiff contends that this statement is simply inaccurate. He also notes that the state agency physicians imposed a limitation on overhead reaching which the ALJ failed to mention either in his decision or as part of the hypothetical question posed to the vocational expert.

    The Commissioner attempts to explain this seeming inconsistency - made apparent by the fact that the ALJ gave both Dr. Torello's and Dr. McCloud's opinions "great weight" while not mentioning the restriction they placed on plaintiff's use of his right shoulder - by suggesting that the condition which those physicians were evaluating was a "right rotator cuff repair" and that the condition improved over time. There are multiple problems with this argument. The ALJ never mentioned that aspect of those physicians' evaluation; it is impossible to know if he simply missed it when reviewing their reports or, for the reasons suggested by the Commissioner, found it unsupported by the record. If the latter is the case, however, the ALJ's citation to record evidence discusses only medical records from January and March, 2011, which is well after the reports in question. The ALJ does not appear to have considered if the restriction existed at the time of their reports, which came more than a year after Plaintiff applied for benefits, and whether, if it was a rotator cuff repair problem, the restriction met the duration requirement of the Social Security Act. No question was posed to the vocational expert which differentiated Plaintiff's overhead reaching capabilities from the beginning to the end of the time period under consideration. If such a restriction would have prevented Plaintiff from performing a substantial number of jobs,

at least while it lasted, he might have been entitled to a closed period of disability.  And, lastly, while there is some evidence to support the fact that in January, 2011, Plaintiff's strength in his right shoulder was 5/5 for flexion, extension, abduction, adduction, and internal and external rotation, his range of motion was actually reduced in both shoulders.  He showed similar reduced range of motion when examined by Dr. Weaver.  It is also interesting to note that Dr. Weaver's strength testing produced fairly similar results (4/5 strength in the shoulder) and Dr. Weaver was not sure those results were reliable, but he still imposed some reaching restrictions.  In short, the record supports Plaintiff's claim both that the ALJ appears to have interpreted the results of the January, 2011 testing in a way that may not be proper - and he did so without having a physician's opinion to rely on - and appears to have completely disregarded, without offering any explanation, the views of the state agency physicians which he otherwise accorded great weight.  This is error, and the Commissioner has not argued it is harmless.  The case must therefore be remanded on that basis.

### C.   The Sentence Six Remand Motion

It is apparently conceded that the ALJ did not review the additional records which are the subject of the sentence six remand motion.  The Commissioner argues that none of the evidence would have changed the ALJ's decision and is therefore not material.  If a sentence four remand is ordered, that will moot this issue because, as part of the remand, the ALJ will have the opportunity to review this evidence.

### VII.   Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner of Social Security pursuant to 42 U.S.C. §405(g), sentence four.  It is also recommended that should the Court do so, the motion for a

sentence six remand (Doc. 12) be denied as moot.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge